UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CLIFFORD MACIAS,<br><br>      Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>      Defendant. | No. CV-05-3108-CI<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY JUDGMENT<br>AND GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for Summary Judgment (Ct. Rec. 17, 21.) Attorney D. James Tree represents Plaintiff; Assistant United States Attorney Pamela J. DeRusha and Special Assistant United States Attorney Thomas Elsberry represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6.) After reviewing the administrative record and briefs filed by the parties, the court **DENIES** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

On April 3, 2002, Clifford Macias (Plaintiff) filed for Disability Insurance Benefits (DIB) and Social Security Income (SSI). (Tr. 54, 261.) Plaintiff alleged an onset date of June 1, 2001, due to depression. (Tr. 80.) Benefits were denied initially

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

and on reconsideration. (Tr. 37.) Plaintiff requested a hearing before an administrative law judge (ALJ), at which he requested benefits for a closed period from June 1, 2001, through September 1, 2004. (Tr. 40, 278.) The hearing was held before ALJ Mary Reed on January 19, 2005. (Tr. 269-319.) Plaintiff, who was represented by counsel, testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 8, 15-27.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF THE CASE**

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. At the time of the hearing, Plaintiff was 45 years old and had a high-school education. (Tr. 280.) He attended cosmetology school full time from October 2001 through February 2003, and completed the program. (Tr. 106, 125-38, 291.) He was separated from his wife at the time of the hearing, and had two children who did not live with him. (Tr. 253, 281, 301.) He lived with his father, who provided financial support. (Tr. 302.) He had past relevant work as a mental retardation aide for 10 years, industrial cleaner, cashier, and cosmetologist. (Tr. 59-63, 315-16.) He stated in his work report that he had had over 150 jobs, but did not provide titles or descriptions. (Tr. 89.) At the time of the hearing, Plaintiff was working as a home attendant for the developmentally disabled. (Tr. 315.)

**ADMINISTRATIVE DECISION**

The ALJ found Plaintiff was working as a home attendant at substantial gainful activity levels beginning September 1, 2004.

(Tr. 19.) She found Plaintiff had worked during the closed period at issue, but these jobs were of short duration and were considered an unsuccessful work attempt. Therefore, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity during the closed period. (Tr. 20.) She found Plaintiff had been treated with chiropractic therapy throughout 2003, but the evidence did not indicate that any anatomical or physiological abnormality lasted the 12 month duration period required for a finding of disability. (Tr. 23.) She also found Plaintiff suffered from depressive disorder, NOS, but his allegations of disability were not supported by medical evidence, and were not "severe" as defined by the Social Security Act. The ALJ denied benefits at step two. (Tr. 26-27.)

**STANDARD OF REVIEW**

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable

construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred in finding Plaintiff's claim was groundless at step two. (Ct. Rec. 19 at 16.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

## DISCUSSION

**A.  Step Two**

Plaintiff argues the record supports a step two finding that his mental impairments cause "more than a 'slight abnormality' in his ability to work." (Ct. Rec. 19 at 19.) To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. §§ 404.1508, 416.908; Social Security Ruling *(SSR)* 96-3p. Plaintiff's testimony that his failure to keep a job is caused by symptoms of a mental impairment is not sufficient to satisfy the severity requirement.

Because an overly stringent application of the severity requirement may violate the statute by denying benefits to claimants who do meet the statutory definition of disabled, the Commissioner has passed regulations which guide dismissal of claims at step two. *Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994). Those regulations state an impairment may be found to be "not severe" *only* when evidence establishes a "slight abnormality" on an individual's ability to work. *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*citing SSR* 85-28). The ALJ must consider the combined effect of all of the claimant's medically established impairments on the ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. § 423(d)(2)(B)(Supp. III 1991). Once determined "severe," an impairment must meet the durational requirement; *i.e.,* it must last or be expected to last for a

continuous period of 12 months to be considered a disability. 20 C.F.R. §§ 404.1505(a), 416.905(a).

A mental impairment generally is considered non-severe for purposes of step two if the degree of limitation in the three functional areas of activities of daily living, social functioning, and concentration, persistence or pace is rated as "none" or "mild," and there have been no episodes of decompensation, unless the evidence otherwise indicates minimal limitations in a claimant's ability to work. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Further, "impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Commissioner of Social Sec. Admin*, 439 F.3d 1001, 1006 (9th Cir. 2006); *c.f. Gamble v. Chater,* 68 F.3d 319, 321 (9th Cir. 1995)(benefits cannot be denied because claimant cannot afford treatment).

Although the step two inquiry is a *de minimis* screening device to dispose of groundless or frivolous claims, *Bowen v. Yuckert*, 482 U.S. 137, 153-154 (1987), the medical evidence nonetheless must be evaluated carefully in the sequential evaluation to determine whether the claimed impairment and related symptoms alleged significantly restrict an individual's physical and mental ability to do basic work. *SSR* 96-3p.

**B.   Medical Evidence**

ALJ Reed carefully summarized and evaluated the medical evidence provided. She found Plaintiff had a significant depressive episode in July 2001, for which he was hospitalized, but one month after treatment with medication, he improved significantly. (Tr.

23-24.)  She found Plaintiff's alleged disabling symptoms caused by depression were not supported by the objective medical evidence. (Tr. 25.)  The ALJ then considered other relevant information in the record, including Plaintiff's self-report and observations from other sources.  (Tr. 25-26)  She determined Plaintiff's depressive disorder, NOS, caused minimal limitations in his ability to work, and was not severe.  (Tr. 26.)  These findings are supported by substantial medical evidence.

Plaintiff was examined in August 2001, shortly after his hospitalization for depression, by Arch Bradley, M.Ed.  (Tr. 158-162.)  Dr. Bradley administered a number of objective tests, including the Wechsler Adult Intelligence Scale-III, to determine Plaintiff's IQ and learning capabilities.  He concluded Plaintiff was of average intelligence (measuring a full scale IQ of 89), and his critical learning aptitudes, attention and mental alertness were within average limits.  (Tr. 159-60.)  He also noted Plaintiff's concentration was good throughout testing and he was not confused "at any time."  (Tr. 160-61.) Based on test results, Dr. Bradley concluded Plaintiff's employment problems were not caused by a specific learning disorder, and opined Plaintiff should be able to complete cosmetology or technical training.  (Tr. 162.)

Regarding his depression, Dr. Bradley observed "no overt signs of depression from [Plaintiff's] social presentation."  (Tr. 161.) During the interview, Plaintiff reported great improvement in his mental health within one month after hospitalization and beginning treatment with Effexor.  (Tr. 158, 160.)  Dr. Bradley reported Plaintiff "has not had employment problems because of below-average

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

intelligence, memory, reading or math.  That leaves whatever his physician is treating him for as the probable cause [for employment problems] since treatment is successful according to Mr. Macias." (Tr. 162.)

Plaintiff submitted mental health records for the relevant period from Central Washington Comprehensive Mental Health (CWCMH), dated August 2001 to November 5, 2003. (Tr. 171-78, 234-42.)[1] Treating physician Jan Kiele, M.D., diagnosed Plaintiff with depression disorder, NOS, in August 2001, and continued treatment with Effexor. (Tr. 171-74.)  As found by the ALJ, the mental health records consistently report excellent results from medication used to treat Plaintiff's depression, and no significant limitations in Plaintiff's ability to function.  For example, Plaintiff was able to start cosmetology school in November 2001, and records indicate he received A's and B's in his work, and completed the course.  (Tr. 253.)   This ability to attend and satisfactorily complete cosmetology school is inconsistent with Plaintiff's claim that his depression caused more than a "slight abnormality" in his ability to work. *See Matthews v. Shalala*, 10 F.3d 678, 680 (1993).  Dr. Kiele noted Plaintiff reported "mild depression" in November 2001, and some increased depression in March 2002, due to worries about losing health benefits and his medications.  (Tr. 175.)  Apparently, this was resolved, and in August 2002, Dr. Kiele noted Plaintiff reported doing "pretty good," and doing well in school.  (Tr. 177.)  There

---

[1] Additional CWCMH records for the period December 2004 to February 2005, reference treatment outside the closed period at issue.  (Tr. 252-60.)

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

were no records of more than mild symptoms reported at this time. Rafat Zakary, M.D., who completed CWCMH progress notes for October 2002 through May 2003, consistently assessed Plaintiff's presentation "WNL" (within normal limits); Plaintiff reported sleeping and eating well, with no side effects to his medication. He was doing well and conforming to medication requirements. (Tr. 234-38.) After three "no shows" at the CWCMH, Plaintiff was discharged in November 2003. (Tr. 242.)

In his visits to Central Washington Family Medicine during the time at issue, Plaintiff reported the Effexor worked "great." In November 2003, his medical provider noted Plaintiff looked and felt "completely healthy." (Tr. 208). He did not complain of depression symptoms, concentration or memory problems. (Tr. 210.) In addition to the medical reports and records from treating and examining doctors, the ALJ considered the report of non-examining agency psychologist, Edward Beaty, Ph.D. (Tr. 26, 179-90.) Dr. Beaty completed a psychiatric review technique form covering the period from June 2001 to October 2002. He found Plaintiff had no severe impairment at the time of the assessment (October 2002), and had not had a severe impairment in the past that met the durational requirement. (Tr. 179.) Specifically, he found no limitations in Plaintiff's activities of daily living, mild limitations in his social functioning and concentration, pace and persistence, and one to two episodes of decompensation of extended duration.[2] (Tr. 189.)

---

[2] In social security proceedings, "severity" of an impairment is measured according to limitations imposed on these four areas by the medically determined mental impairment. As explained in the

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

**C.   Medical and Non-Medical Opinions**

In the sequential evaluation, an ALJ must give "specific and legitimate" reasons for rejecting contradicted medical opinions from treating or examining physicians. If medical opinions are uncontradicted, the reasons must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). As discussed above, Plaintiff's treating and examining doctors found Plaintiff responded

---

Regulations: "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties [in the other three areas]." 20 C.F.R. Pt. 404. Subpt. P, App.1, 12.00 C4. The term "repeated episodes of decompensation, each of extended duration" means at least three episodes within one year or an average of once every four months. Documentation of significant medication changes, hospitalization or placement in a structured living environment is evidence of an "episode of decompensation." Id. Here, the record indicates two depressive episodes were reported, one in July 2001 (which required hospitalization) and one in March 2002 (worry, decreased sleep and depressed affect reported by Plaintiff's mental health provider, but no change in medication or living environment and no suicidal ideation). (Tr. 175.) These were resolved with medication within two months. Therefore, it appears Plaintiff's episodes did not rise to the level of "decompensation" as defined by the Regulations. Further, the two episodes of record occurred about eight months apart; therefore, Dr. Beaty's finding of one or two episodes of decompensation is not supported by substantial evidence.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

well to medication; none reported significant limitations caused by his diagnosed depression. The ALJ's findings are consistent with these medical source opinions.

Plaintiff argues Global Assessment of Functioning (GAF) scores assessed by medical personnel indicate his impairments caused more than "slight abnormality," relying on GAF scores assessed by Dr. Kiele and Dr. Bradley in July and August 2001, and by CWCMH therapists in November 2003 and December 2004. (Ct. Rec. 19 at 19.) Plaintiff also cites the fact that he was unable to keep his cosmetology jobs as evidence of a severe impairment. (Id.)

Plaintiff provides no legal support for the contention that a GAF score is a basis for a finding of severe impairment as defined by the Regulations. The GAF scale is a common diagnostic tool for tracking and evaluating the overall psychological functioning of a patient. The information is used in planning treatment, measuring its impact, and predicting outcome. Unless identified as the highest in a given period of time (*e.g.,* for the past year), ratings on the GAF scale reflect an individual's level of functioning at the time of evaluation. A score of 41-50 indicates a patient is currently experiencing serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequently shoplifting OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders (DSM-IV),* 4th ed., at 30. The Commissioner, however, has explicitly disavowed any use of the GAF scores as an indicator of disability. In August 2000, the Commissioner, in discussing comments to the current mental disorder evaluation

regulations (20 C.F.R. §§ 404.1520a, 416.920a), stated that "[t]he GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listings." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Further, the GAF score is one factor considered in the Commissioner's evaluation. In assessing impairments during social security proceedings, the ALJ must consider the record in its entirety. It is the ALJ's responsibility to determine credibility and resolve conflicts or ambiguities in the evidence presented, and the court will not second guess the ALJ's determination where it is reasonable and supported by substantial evidence. *Morgan*, 169 F.3d at 599; *Andrews*, 53 F.3d at 1039-40.

Dr. Kiele's GAF rating was made while Plaintiff was hospitalized (Tr. 140); it is not probative to Plaintiff's ability to do basic work task over a 12 month period. In the case of Dr. Bradley's GAF score, the ALJ did not err in relying on Dr. Bradley's report in its entirety, based on objective testing and a personal interview; that Plaintiff had improved significantly on medication after the July 2001 hospitalization; he was capable of job training, with spelling assistance; and employment problems were not related to a learning disability, memory, or below-average intelligence problems. (Tr. 21, 162.)

Having concluded that the medical evidence did not support a finding of "severe impairment," the ALJ considered other relevant evidence, including reports from Patrick Gonzales and Doyle Hardy, mental health counselors at CWCMH. (Tr. 23, 25.) Both therapists are considered "other sources" (*i.e.,* non-medical) by the Regulations for purposes of opinion evidence. 20 C.F.R. §

404.1513(d).  Plaintiff argues the mental health counselors assessments should be given "treating physician weight" because they treated him "in conjunction with Dr. Birdlebough, at a team treatment clinic." (Ct. Rec. 23 at 6; Tr. 260.)  However, there is nothing in the record to show what extent the counselors were supervised by Dr. Birdlebough, how much contact Dr. Birdlebough had with Plaintiff, and how well and to what extent the counselors informed Dr. Birdlebough of Plaintiff's condition.  *See Benton ex rel. Benton v. Barnhart*, 331 F. 3d 1030, 1039 (9th Cir. 2003). Therefore, opinions from counselors Hardy and Gonzales properly are considered "other source" opinions.  20 C.F.R. § 404.1513 (d).

Non-medical testimony cannot establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  Yet, the ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993), an ALJ is obligated to give reasons germane to "other source" testimony before discounting it.  It is appropriate to discount lay testimony if it conflicts with medical evidence. *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  The ALJ did not reject Mr. Gonzales's testimony entirely; she found his statement regarding Plaintiff's ability to maintain employment was incorrect, a finding that is supported by the record. (Tr. 25, 60-62.)  However, Mr. Gonzales's responses to the Daily Activities Questionnaire generally support the ALJ's findings that alleged impairments did not cause more than mild

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 13

limitations to Plaintiff's activities of daily living. For example, Mr. Gonzales observed in May 2002, that Plaintiff was attending school daily, could do self care, comply with medication treatment, drive, and understand the television he watched. (Tr. 103-07.) In November 2003, Mr. Gonzales completed Plaintiff's discharge report, noting that Plaintiff appropriately was addressing his activities of daily living. The discharge report also includes an Axis V diagnosis of GAF 38 (current) and 42 (past year), but there is no narrative describing Mr. Gonzales' personal observations of how this affects Plaintiff's ability to work. (Tr. 242.) As discussed above, the Axis V diagnosis by a non-medical sources is not considered. Further, the ALJ is not required to address evidence that is not probative. *Vincent*, 739 F.2d at 1395.

The ALJ discounted Mr. Hardy's residual functional capacity assessment for germane and legitimate reasons, *i.e.,* the assessment was completed outside the period at issue and was not supported with more than brief treatment notes that did not indicate Plaintiff's condition would meet the Regulations' durational requirement. (Tr. 24.) These reasons are supported by the record. (Tr. 243-44, 257.) Mr. Hardy's clinical notes indicate he began treating Plaintiff in December 2004, outside the closed period at issue. (Tr. 253-60.) It follows that the January 2005 residual functional capacity assessment is for that limited period and therefore not probative. Other than a depressed mood, Mr. Hardy noted no abnormalities in Plaintiff's mental status evaluation. (Tr. 254-55.) Mr. Hardy speculated Plaintiff may have attention deficit disorder, but there is no corresponding medical source diagnosis. (Tr. 256.) The ALJ

did not err in her evaluation of Mr. Hardy's opinions.

The ALJ also considered Plaintiff's testimony and noted inconsistencies between his statements and other evidence in the record. (Tr. 25.) As discussed above, an impairment cannot be found "severe" based on a claimant's statement alone. Here, the medical evidence and other relevant information does not establish that Plaintiff's mental impairments caused more than a "slight abnormality" in his ability to do basic work activities. Further, as noted by the ALJ, Plaintiff was able to successfully complete cosmetology school and receive his license during the period at issue; the fact that he was given extra time to complete written tests is not evidence of a "severe" impairment.

**D.  Vocational Expert Testimony**

Plaintiff asserts the vocational expert (VE) testimony demonstrates that his claim is not groundless. Plaintiff represents that the VE "admitted the one remaining job [that the hypothetical individual could perform] was probably beyond [Plaintiff's] capacity." (Ct. Rec. 19 at 20.) However, a review of the VE testimony does not support Plaintiff's contention.

Based on her review of the record and hearing testimony, the VE identified Plaintiff's past work as industrial cleaner, mental retardation aide and cashier II.[3] (Tr. 303-05, 315.) This testimony

---

[3] Plaintiff submitted a Work History Report in support of his claim, but did not list specific jobs or description, only that there were 150 past jobs. (Tr. 89.) The Earnings Report lists about eleven employers; some of the work did not amount to substantial gainful activity. Only work within the past 15 years

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

is supported by the Earnings Report submitted. (Tr. 59-62.) At the ALJ's request, the VE did not include Plaintiff's recent training as a cosmetologist or current work as a home aide.

In response to the ALJ's hypothetical question, the VE testified the described individual could perform work as an industrial cleaner and, in some settings, cashier. (Tr. 317.) On cross-examination, Plaintiff's counsel asked about reading level requirements for the industrial cleaner and cashier. (Tr. 318.) The VE testified these jobs required a Level 2 reading skill (fourth to sixth grade), well within Plaintiff's tenth grade ability. (Tr. 318, 160.) There was no testimony that either job was precluded. (Tr. 318.) Further, at step two, the issue is not whether Plaintiff can perform his past relevant work, but whether his impairment causes more than a "slight abnormality" in his ability to do basic work-related activities. 20 C.F.R. §§ 404.1521, 416.921. The VE testimony does not establish that Plaintiff's mental impairment is "severe."

**CONCLUSION**

The ALJ's step two finding that Plaintiff's impairments are not "severe" as defined by the Regulations is supported by substantial evidence and free of legal error. Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED**;

---

that was substantial gainful activity and lasts long enough for learning the job is considered as past relevant work. 20 C.F.R. 404.1560(b)(1).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 21)** is **GRANTED;**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED.**

DATED January 18, 2007.


                         S/ CYNTHIA IMBROGNO
                    UNITED STATES MAGISTRATE JUDGE

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17